UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BRADSHAW, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CHW GROUP, INC. d/b/a/ CHOICE HOME WARRANTY,<br><br>*Defendant*. | No. 24-cv-00114 (MEF)(JBC)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
      **A. The Allegations**
      **B. The Lawsuit**
      **C. The Motion**
      **D. The Court's Approach**
II.  **Jurisdiction**
III. **General Legal Standards**
IV.  **The TCPA Claims**
      **A. The First Claim**
            **1.   Element One**
            **2.   Element Two**
            **3.   Element Three**
      **B. The Second Claim**
            **1.   A Private Right of Action?**
            **2.   The Merits**
V.   **Motion to Strike**

**VI.   Conclusion**

\*   \*   \*

A consumer solicited information from a company, but says that he later asked to be added to its "do not call" list.

The customer sued, alleging that the company continued to call and text him.

The company now moves to dismiss.

The motion is denied.

\*   \*   \*

**I.   Background**

**A.   The Allegations**

The allegations as relevant for now are as follows.

In late 2023, looking to receive additional information about a company's[1] product, a consumer[2] provided his personal cellphone number on an online form.  See First Amended Complaint ("Complaint") ¶¶ 23, 27-29.

After going back and forth with the company by phone and email, the consumer asked to be placed on the company's do not call list.  See id. ¶¶ 30-39.

But the consumer continued to receive calls that he believed came from the company.  See id. ¶¶ 40-68.  Among the calls: a voicemail that the consumer suspected was prerecorded.  See id. ¶¶ 69-71.

**B.   The Lawsuit**

In light of the above, the consumer (from here, "the Plaintiff") sued the company (from here, "the Defendant").[3]

---

[1]   The company: CHW Group, Inc. d/b/a/ Choice Home Warranty.

[2]   Michael Bradshaw.

[3]   The Plaintiff sued on behalf of himself and two putative classes.  See Complaint ¶ 79.

2

The Plaintiff's Complaint presses two claims, each under the Telephone Consumer Protection Act ("TCPA"). See Complaint ¶¶ 85-93.

### C. The Motion

The Defendant has moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

The motion is before the Court.

### D. The Court's Approach

To analyze the motion, the Court first moves through the preliminaries --- as to subject matter jurisdiction, see Part II, and the general standards relevant to a motion to dismiss. See Part III.

Next, the Court analyzes the Plaintiff's two TCPA claims, concluding that the first plausibly states a claim, see Part IV.A, and that the second one does, too. See Part IV.B. The motion to dismiss must therefore be denied.

Finally, the Court briefly considers, and rejects, the Defendant's in-the-alternative argument --- that certain material should be stricken from the Complaint. See Part V.

## II. Jurisdiction

"[W]hen there is a question as to [a court's] authority to hear a dispute, it is incumbent upon the court[] to resolve such doubts . . . before proceeding to . . . the merits." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (cleaned up).

Here, there is "a question" about one thing.

Among other relief, the Plaintiff seeks an injunction; the proposed injunction would require the Defendant to "cease all unsolicited calling/texting activity." Complaint at 26.

To establish standing for injunctive relief, a plaintiff must generally show that he is "likely to suffer future injury" caused by the defendant. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).

But here, the Plaintiff presses no allegations that fit the bill.

There are no suggestions in the Complaint that any of the alleged conduct is ongoing or even potentially ongoing, or that there is reason to think it might start up again. There are, for example, no allegations as to especially recent calls or texts. There are no allegations of any continuing interactions between the Plaintiff and the Defendant. And there are no alleged texts or voice messages from the Defendant that meaningfully refer to loose ends that it (the Defendant) will try to tie up in the future, perhaps through more calls or texts.

Bottom line: the allegations in the Complaint are in no way forward-looking.

This undoes any suggestion that the Plaintiff is "likely to suffer <u>future</u> injury" caused by the defendant, <u>Lyons</u>, 461 U.S. at 105 (emphasis added), and so the Plaintiff lacks standing to pursue injunctive relief. <u>See</u> <u>id</u>. His request for such relief is therefore stricken from the Complaint. <u>See</u> <u>Doyle</u> v. <u>Matrix Warranty Sols.</u>, 679 F. Supp. 3d 42, 44 (D.N.J. 2023).

### III. <u>General Legal Standards</u>

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." <u>Phillips</u> v. <u>Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008).

Motions to dismiss are then assessed as follows.

<u>First</u>, the Court "must tak[e] note of the elements [a] plaintiff must plead to state a claim." <u>Connelly</u> v. <u>Lane Constr. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016) (quoting <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 675 (2009)).

<u>Second</u>, the Court must identify those allegations in a complaint that are merely conclusory, and set them to one side as irrelevant to the analysis. <u>See</u> <u>id</u>.

And <u>third</u>, the Court must determine whether the remaining allegations "plausibly give rise to an entitlement to relief." <u>Id</u>. (quoting <u>Iqbal</u>, 556 U.S. at 679).

4

**IV.   The TCPA Claims**

As noted, see Part I.C, the Defendant moves to dismiss the Plaintiff's two TCPA claims.

    **A.   The First Claim**

The first TCPA claim invokes 47 U.S.C. § 227(b)(1)(A)(iii).

"The elements of a Section 227(b)(1)(A)(iii) violation are that (1) the defendant called a cellular telephone number; (2) using a prerecorded voice; (3) without the recipient's prior express consent." Doyle, 679 F. Supp. 3d at 45 (cleaned up).

Take these elements one at a time.

        **1.   Element One**

First: has the Plaintiff plausibly alleged that the Defendant called his cell phone? See id.

The Court's conclusion: yes.

            \*   \*   \*

The Plaintiff alleges that on December 8, 2023, a call came in to his cellphone, see, e.g., Complaint ¶¶ 20-23, 69-71, and it left behind a voicemail. See id. ¶ 70. The voicemail said: "[h]ey, this is Erica calling from [the Defendant]," see id., and it went on to advertise discounts for the type of product that the Defendant is alleged to sell. See id. ¶¶ 15, 70.

            \*   \*   \*

At first glance, these allegations seem like a strong basis for attributing the December 8 call to the Defendant.

After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is.

So too as to the December 8 call. The caller allegedly introduced herself as "Erica . . . from [the Defendant]." Id. ¶ 70. Why then would it not be plausible to conclude that she was, in fact, "Erica . . . from [the Defendant]"?

The logic of this approach is reflected in the decisions of any number of federal courts. See, e.g., Marks v. Unique Lifestyle Vacations, LLC, 2024 WL 1051974, at \*3 (E.D. Pa. Mar. 11, 2024);

5

Katz v. CHW Grp., Inc., 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); Smith v. Am.-Amicable Life Ins. Co. of Tex., 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); Adam v. CHW Grp., Inc., 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021).

But there is also an alternative approach.

People may generally be honest about who they are in-person. But, the argument goes, when it comes to randomly-received phone calls or texts, dishonesty about one's identity is at least somewhat common --- and therefore, it will not always make sense to conclude that the person on the other end of the line is who they say they are.

This alternative approach also has some force behind it --- and it, too, is reflected in the decisions of some federal courts. See, e.g., Scruggs v. CHW Grp., Inc., 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020).

\*   \*   \*

Here, there is no need to choose between the two competing schools of thought sketched out above.

The reason: the Plaintiff alleges that, at first, he affirmatively reached out to the Defendant and spoke to an employee there. See Complaint ¶¶ 28-34.  Around one month later, the alleged December 8 call came through on the Plaintiff's cellphone.  See id. ¶ 69.  The Plaintiff's prior (and then-recent) interaction with the Defendant is telling.  It makes it much more likely that when he got a call "from [the Defendant]" the call was, indeed, from the Defendant.

To be sure, coincidences happen.  It is possible that the Plaintiff spoke to the Defendant and then a month later got a call from someone else entirely (a telemarketer, perhaps) who was only pretending to be associated with the Defendant.

But what is necessary at this stage is not an ironclad allegation, but a plausible one.  See generally McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 269 n.3 (3d Cir. 2016) ("The plausibility standard does not impose a probability requirement; it only requires a pleading to show more than a sheer possibility that a defendant has acted unlawfully.") (cleaned up).

6

And the Plaintiff has plausibly alleged that the December 8 call was from the Defendant, in light of both what the caller said and the Plaintiff's prior interactions with the Defendant.

### 2. Element Two

Now turn to the second element, whether the call was prerecorded. See Doyle, 679 F. Supp. 3d at 45.

> Courts in this circuit have recognized the following averments to be indicative of a pre-recorded call: 1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called.

Cabral v. Penske Truck Leasing Co. LP, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024) (cleaned up); see also Smith v. Pro Custom Solar LLC, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021) (noting similar considerations and collecting cases).

Of the six Cabral boxes set out above, three are checked here. See Complaint ¶¶ 70-71 (allegations as to the December 8 call: providing instructions to call a 1-800 number; using a "robotic"-sounding delivery; and leaving a generic message). This suggests that the "prerecorded" element has been plausibly alleged. See, e.g., Cabral, 2024 WL 1916701, at *6; Somogyi v. Freedom Mortg. Corp., 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018); Slominski v. Globe Life Inc., 2024 WL 556978, at *6 (E.D. N.C. Feb. 12, 2024).

Moreover, the Plaintiff alleges that the voicemail that was left on December 8 "appear[ed] to start mid sentence[.]" See Complaint ¶ 71.

This buttresses the conclusion that the message was prerecorded.

People who place live calls and get voicemail ("You have reached . . .") generally hear the concluding beep --- and only then start to leave their message. This generates voicemails that start at the beginning of a sentence, not in the middle of one.

By contrast, machines doling out prerecorded messages are more likely to make a mistake, and to begin leaving a message a bit

7

early --- so that what is recorded on the voicemail does not quite start at the beginning.

Adding all this up, the Plaintiff has plausibly alleged that the December 8 call was prerecorded. Half of the Cabral factors are satisfied here, and the voicemail in question allegedly started mid-sentence.

### 3.   Element Three

As to the third and final element, does the Plaintiff adequately allege that the December 8 call was made without his consent? See Doyle, 679 F. Supp. 3d at 45.

Again, yes.

The Plaintiff alleges that he originally reached out to the Defendant.  See Complaint ¶¶ 28-34.

And then afterwards, he alleges, he asked to be placed on the Defendant's do not call list --- and repeatedly requested that the Defendant stop contacting him.  See id. ¶¶ 39, 60, 68.

That clears the bar.  See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) ("(1) the TCPA affords [a plaintiff] the right to revoke her prior express consent to be contacted on [her] cellular phone . . . and (2) there is no temporal limitation on that right").

\*   \*   \*

The Complaint sets out plausible allegations as to each of the three elements of the Plaintiff's first TCPA claim.  The Defendant's motion to dismiss that claim is therefore denied.

### B.   The Second Claim

The Plaintiff's second claim: the Defendant violated 47 U.S.C. § 227(c)(5).  See Complaint ¶¶ 89-93.

Under that section of the TCPA, a person can sue if he "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]"  47 U.S.C. § 227(c)(5).

What "regulation[]" was allegedly violated here?  The Plaintiff points to 47 C.F.R. § 64.1200(d).  See Complaint ¶ 90.

8

The Defendant moves to dismiss the Plaintiff's second claim on two grounds. Take those up below.

### 1. **A Private Right of Action?**

First, the Defendant argues the Plaintiff cannot invoke 47 C.F.R. § 64.1200(d) because that regulation was issued under 47 U.S.C. § 227(d) --- a provision of the TCPA that, it is said, does not provide for a private right of action. See Motion to Dismiss at 20-21.

The Third Circuit has not directly weighed in on this question.[4]

But federal courts around the country have --- with most courts holding that there is a private right of action. See, e.g., Fischman v. MediaStratX, LLC, 2021 WL 3559639, at *4-*6 (E.D.N.C. Aug. 10, 2021) (holding that there is a private right of action, and collecting cases); Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020) (same); Persichetti v. T-Mobile USA, Inc., 479 F. Supp. 3d 1333, 1338-39 (N.D. Ga. 2020) (same); Worsham v. LifeStation, Inc., 2021 WL 5358876, at *13-*16 (Md. Ct. Spec. App. Nov. 17, 2021) (same); but see, e.g., Wilson v. PL Phase One Operations, L.P., 422 F.

---

[4] In one case, Shelton, the Third Circuit affirmed a district court decision that found a defendant liable for violating 47 C.F.R. § 64.1200(d), the regulation in play here. See Shelton v. Fast Advance Funding, LLC, 805 F. App'x 156 (3d Cir. 2020), aff'g on other grounds 378 F. Supp. 3d 356 (E.D. Pa. 2019). But Shelton did not address the private right of action issue. See also Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019) (similar: suggesting, without further analysis, that § 64.1200(d) was promulgated under 47 U.S.C. § 227(c)); Charvat v. NMP, LLC, 656 F.3d 440, 443-44 (6th Cir. 2011) (same); but see Worsham v. Travel Options, Inc., 678 F. App'x 165 (4th Cir. 2017), aff'g on other grounds 2016 WL 4592373 (D. Md. 2016) (affirming, without comment on the issue, a district court opinion holding there is no private cause of action under § 64.1200(d)). Shelton cannot be meaningfully relied on here, because "[i]t is universally recognized that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Pennsylvania v. Brown, 373 F.2d 771, 784 (3d Cir. 1967) (cleaned up); cf. Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 237 n.28 (D.N.J. 2023).

Supp. 3d 971, 981-82 (D. Md. 2019) (no private right of action); Burdge v. Ass'n Health Care Mgmt., Inc., 2011 WL 379159, at *3-*4 (S.D. Ohio Feb. 2, 2011) (same).

This Court is persuaded that there is a private right of action here, largely for the reasons set out in Fischman, 2021 WL 3559639, at *4-*6, and Persichetti, 479 F. Supp. 3d at 1338-39.

### 2. The Merits

The Defendant also seeks to dismiss the second TCPA claim on the merits, for failure to state a claim.

The elements that must be adequately alleged to state a claim under 47 U.S.C. § 227(c)(5): "(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; . . . (3) in violation of the regulations promulgated by the [Federal Communications Commission]." Persichetti, 479 F. Supp. 3d at 1339 (cleaned up); see also Zelma v. Penn LLC, 2020 WL 278763, at *6 (D.N.J. Jan. 17, 2020).

\* \* \*

The first of these three elements is satisfied.

The alleged December 8, 2023 phone call was discussed above. See Part IV.A.1.

And the Plaintiff also alleges that he received an unsolicited text message[5] on November 13, 2023. See Complaint ¶¶ 41-43.

\* \* \*

The next element is whether the November and December communications were "by or on behalf of the same entity." Persichetti, 479 F. Supp. 3d at 1339.

Here, that test is met.

The Plaintiff has plausibly alleged that the December 8 phone call came from the Defendant. See Part IV.A.

---

[5] Text messages are considered "calls" for these purposes. See Zelma, 2020 WL 278763, at *6 (implying this); see also Gager, 727 F.3d at 269 n.2 (3d Cir. 2013) (discussing the TCPA more generally).

10

And the content of the November 13 text[6] points to the same conclusion, and largely for the same reasons.

\*   \*   \*

Come now to the third element of a § 227(c)(5) claim: whether the Defendant's contacts with the Plaintiff violated the relevant FCC regulations. See Persichetti, 479 F. Supp. 3d at 1339.

As previously discussed, the Plaintiff asserts that the Defendant violated 47 C.F.R. § 64.1200(d). See Complaint ¶¶ 90-91.

That subsection states that "[n]o person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive [telemarketing] calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The regulation then set out the standards that such procedures must meet, including "a written policy, available upon demand, for maintaining a do-not-call list," and the requirement that personnel "must be informed and trained in the existence and use of the do-not-call list." Id.

The Plaintiff alleges that he was repeatedly contacted by the Defendant after asking to be placed on its do not call list, and after following up repeatedly to that effect. See Complaint ¶¶ 40-71.

From this, the Plaintiff argues, it can plausibly be inferred that the Defendant violated the FCC regulation, because it failed to "implement[] internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls/text messages." Id. ¶ 91.

This argument has been accepted by any number of federal courts. See, e.g., Persichetti, 479 F. Supp. 3d at 1340; Fischman, 2021

---

[6] The November 13 text: "Morning [Plaintiff], It's Jen with [the Defendant] reaching out about your request for a home warranty quote. If you're still interested, let us know and we can set up a call to discuss our best deals. Text X to end." Complaint ¶ 43.

11

WL 3559639, at *6; Delgado v. eMortgage Funding, LLC, 2021 WL 4776774, at *5 (E.D. Mich. Oct. 13, 2021). And this Court accepts the argument, too.[7]

\* \* \*

In a nutshell: the Complaint sets out plausible allegations as to the three elements of the Plaintiff's second TCPA claim. Therefore, the motion to dismiss that claim is denied.

## V.  Motion to Strike

The Defendant's final argument: if it denies the motion to dismiss, as it now has, the Court should strike certain "facially improper" allegations from the Complaint. See Motion to Dismiss at 27 (referring to Complaint ¶¶ 18, 72-74).

The motion to strike is denied.

The Defendant first suggests that striking certain allegations prevents "undu[e] prejudice," seemingly by ensuring the Court would not consider the referenced allegations as part of its assessment of the motion to dismiss. See id. at 28.

But the Court has not here relied on the portions of the Complaint that are the subject of the motion to strike.

Next, the Defendant moves to strike one of the Plaintiff's proposed class definitions on the ground that it is "impermissibly 'fail-safe' in violation of Rule 23." Id.

But the time to object to the Plaintiff's proposed class definition is if and when the Plaintiff moves to certify a class. Such a motion is presumably not far off. See generally Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court

---

[7] The Court expresses no opinion as to whether the Plaintiff bears the pleading burden on the Defendant's implementation of "internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls/text messages." Complaint ¶ 91; cf. Anigbogu v. Midland Credit Mgmt., Inc., 2025 WL 247592, at *3 (D.N.J. Jan. 16, 2025) (describing Third Circuit case law that is potentially relevant to this question); Prestan Prods. LLC v. Innosonian Am., LLC, 2024 WL 278985, at *5 n.17 (D.N.J. Jan. 25, 2024) (similar).

must determine by order whether to certify the action as a class action."). But it has not yet been made.

## VI. Conclusion

For the reasons set forth above, the Defendant's motion to dismiss is denied, and so is its motion to strike.

It is on this 24th day of January, 2025, so **ORDERED**.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Michael E. Farbiarz, U.S.D.J.